## Borough of Mechanicsburg

*William L. Sunday,* Solicitor for Borough of Mechanicsburg, for petitioners.

*Henry F. Coyne,* for exceptants.

SHUGHART, P. J., November 3, 1971.—The Borough Council of Mechanicsburg presented a petition to this court on September 4, 1970, to abolish all wards in the borough and to decree the election of seven councilmen at large. Pursuant to the provisions of section 602 of the Borough Code, as amended, 53 PS §45602, the court appointed a commission to inquire into the propriety of granting the prayer of the petition. The commission was unable to file a report within the 60-day period provided for in the statute and on application of the commissioners, extensions were granted. On February 2, 1971, the

report of the commission was filed which was signed by Mark E. Garber, Jr., Esq., and Lehman D. Lambert, two of the commissioners. Subsequently, the third member of the commission, John E. Hubley, wrote two letters to the president judge which were attached to the report.

After the report was filed, exceptions were filled on behalf of some residents of the borough.

The matter was listed for argument, briefs have been filed and the matter orally argued before the court en banc.

A number of the exceptions deal with the alleged failure on the part of the borough council and the commissioners to comply with formal requirements of the proceeding. We shall treat with these objections first.

Exceptants contend that the commissioners failed to give proper notice of the meetings or hearings that they held. This exception is not well taken. Section 602 of the Borough Code of 1966, as amended, 53 PS §45602, which provides for the appointment of the commissioners, makes no provision for hearings by the commissioners nor for any notice to be given. Nonetheless, a notice of initial hearing of the commissioners was published in the Mechanicsburg News, a newspaper published in the Borough of Mechanicsburg.

Exceptants also complain that the commissioners took no minutes of their own meetings or of the public hearing that was held on this subject. There is likewise no provision in the act providing that such minutes be kept.

With regard to both advertising and the keeping of minutes, our legislature has in many, many instances clearly provided for each where it felt the necessity therefor. With regard to the taking of

minutes, there is a specific provision in connection with meetings of the borough council: Borough Code, §1006 (2), 53 PS §46006); meetings of the board of adjustment: (Borough Code, §3207 (c), 53 PS §48207); meetings of the Board of Road Viewers: Article VIII, sec. 807, of the Eminent Domain Code, 26 PS §§1-807. No citation of authority is required for the proposition that the legislature has provided for giving notice by advertisement where it feels that such is needed.

The report filed by the two commissioners recommends that the prayer of the petition to abolish the wards and elect seven councilmen from the borough at large be approved. In reaching this conclusion, the report advances several reasons. The first reason is that the population of the borough is increasing with the resultant need for increased services and increased budget expenditures. It was felt that seven councilmen could better handle the affairs of the borough than the present five. Secondly, the report indicates that the population of the five wards is woefully out of balance. There were no 1970 census figures available for each ward, but according to a 1969 school census, the population of the second ward exceeded the total population of the first, third and fourth wards combined. The fifth ward had approximately the same number of people as the third and fourth wards combined but, at the same time, had slightly more than half as many people as were in the second ward.* We are aware that the school census figures are not official, but in the absence of the official figures, we feel they are worthy of consideration for this

---

*The 1969 school census showed the Mechanicsburg population to be 8,513 persons: first ward, 1,114; second ward, 3,634; third ward, 970; fourth ward, 974; fifth ward, 1,821.

purpose. Under these circumstances, the findings of the commission that the present system does not give proper representation is irrefutable.

The commissioners also found that a realignment of wards would furnish only a temporary solution, because there are undeveloped residential areas on both the north and south sides of the borough. The commissioners further found that the election of councilmen by the wards precludes qualified persons from serving on the council and that on two occasions qualified councilmen have been forced to resign because they moved to another ward in the borough. Finally, the commissioners found that there could be no present realignment of the boroughs because the 1970 census figures by ward in Mechanicsburg were not available. It might well be added that even after they were available, it would be a very expensive thing to realign wards. Unlike a situation where the creation of the districts for the district justices of the peace which involved full municipalities, population figures for which are available, there are no population figures street by street in a borough to aid in establishing wards. The division of the Borough of Mechanicsburg into five wards of approximately the same population would present an almost insurmountable task.

Basically, exceptants contend that these findings by the commissioners are not substantiated by the record. Since there is no "record" as such, there can be no quarrel with this general statement. There can be no dispute, however, with the basic findings which the commissioners drew because they are supported by common knowledge.

Section 601 of the Borough Code, as amended, 53 PS §45601, provides that there shall be a realignment of ward boundaries in the borough whenever the

official census of the United States shall disclose "that in any borough the population of any ward exceeds by fifty per cent or more or is fifty per cent or more less than the average population of all the wards of such borough." While we do not have the official United States census figures, we believe that the school census figures referred to above indicate that the ward boundaries of the Borough of Mechanicsburg will have to be adjusted when the census figures are available. This statutory provision is dictated by the "one-man, one-vote" rule established by the case of Gray v. Sanders, 372 U.S. 368, 9 L.Ed.2d 821, 83 S.Ct. 801 (1963); Reynolds v. Sims, 377 U.S. 533, 12 L.Ed.2d 506, 84 S.Ct. 1362 (1964). "It is well established that electoral apportionment must be based on the general principle of population equality and that this principle applies to state and local elections": Abate v. Mundt, 403 U.S. 182, 29 L.Ed.2d 399, 91 S.Ct. 1904, 1906 (1971).

This Federal constitutional mandate is enunciated in Article 9, sec. 11, of the Pennsylvania Constitution which provides that:

"Within the year following that in which the Federal decennial census is officially reported as required by Federal Law, and *at such other times* as the governing body of any municipality shall deem necessary, each municipality having a governing body not entirely elected at large shall be reapportioned, . . . into districts which shall be composed of compact and contiguous territory as nearly equal in population as practicable, . . ." (Italics supplied.)

The report of the commissioners clearly demonstrates the fact that there must either be a realignment of the wards of the Borough of Mechanicsburg or an abolition thereof in order to comply with constitutional requirements. The commissioners' approval

of the petition which chose the less expensive procedure of abolition, which would at the same time afford a permanent instead of a temporary solution, is amply warranted.

Our courts have said:

"It is the clear intent of the Constitution that reapportionment be a legislative function and that judicial action should only take place in the event of inordinate delays": Lower Merion Township Appeal, 215 Pa. Superior Ct. 363, 366 (1969). Likewise, a decision whether to reapportion wards or to elect councilmen at large is basically a legislative decision which rests in the hands of borough council. In this case, the majority vote has expressed its desire to eliminate wards and to elect councilmen at large. Unless there is a gross abuse of discretion, and certainly no such abuse appears here, that decision cannot be overturned by the courts.

Our Supreme Court has said:

"The task of reapportionment is not only the responsibility of the Legislature, it is also a function which can be best accomplished by that elected branch of government": Butcher v. Bloom, 415 Pa. 438, 461.

Finally, exceptants contend that the petition of the Borough must be dismissed because it "does not contain an averment that the resolution . . . contained an approval of the mayor or was approved over the veto of the mayor as provided by the Borough Code in 53 PS §46007." Section 602 of the Borough Code, 53 PS §45602, provides that the petition referred to in section 601 of the Borough Code, for the realignment or abolition of wards "shall be presented by the council of the borough pursuant to a resolution of the council. . ." There is no reference in this section to the necessity for

mayoralty approval. Section 1007 of the Borough Code, 53 PS §46007, provides: "Every ordinance and every resolution of Legislative character except as herein otherwise provided, passed by council, shall be presented to the mayor for his approval. . ."

The question is thus posed as to whether the resolution to abolish wards is legislative in character. We have no hesitancy in concluding that the answer must be in the affirmative. While the action by borough council in this instance did not result in changing the manner in which councilmen would be elected or, actually increasing the number of councilmen from five to seven, it is quite clear that the borough resolution was the first step in bringing about this result. As stated by Judge Watkins in the Lower Merion Township Appeal case, supra, it is the clear intent of the Constitution that reapportionment be a legislative function and where action is taken to eliminate or avoid reapportionment, the action is no less legislative. It thus appears that the resolution should in this case have been signed by the mayor, and it was not so signed.

From the record in this case, there is no explanation for the absence of the mayor's signature approving the resolution. Section 1007 of the Borough Code, 53 PS §46007, supra, provides for the mayor to approve councilmanic action by affixing his signature thereto and, further, there is the usual provision for the passage of a resolution or ordinance over his veto. In addition, there is the following provision:

"If any such ordinance or resolution shall not be returned by the mayor at the regular meeting of the council occurring at least ten days next succeeding its presentation to him, it shall likewise have as full force as if it had been approved."

In this case, the resolution was adopted on July

21, 1970, but the petition was not presented to the court until September 4, 1970. We are, therefore, unable to determine whether the resolution was returned to the council without action as indicated above, whether the absence of the mayor's signature was due to the fact that the resolution was not submitted to him for signature, or whether the mayor refused to sign it.

There is authority for the proposition that a resolution requiring mayoralty approval is invalid in the absence of such approbation: Long v. Lemoyne Borough, 222 Pa. 311 (1908). In the instant case, a great deal of time and effort has been expended to bring this matter to its present posture for decision. We feel that it should not be determined on the basis of a technicality. If the matter was approved because the mayor did not act upon the resolution prior to the succeeding council meeting, we believe that the petitioners should be given an opportunity to amend their petition to so aver. Likewise, if, in fact, the absence of the mayor's signature was inadvertent, permission should be granted to correct this oversight by an amendment to the petition. If neither of these alternatives state the true situation, then the petition must be dismissed.

If, in fact, the mayor favors the action taken by the majority of council, this procedure will avoid a repetition to court concerning a matter which would have been approved save for a technical omission. On the other hand, if the mayor is unfavorably disposed, the petition will be dismissed.

## ORDER OF COURT

And now, October 26, 1971, for the reasons set forth above, exceptants' objection to the failure of the resolution of borough council to be approved by the mayor

is sustained and the petition is dismissed, unless the petition to abolish wards shall be amended as indicated above within 10 days of this date to explain the absence of the mayor's signature or to show his concurrence with the resolution. If an amendment is filed, this exception along with all other exceptions filed to the petition be and are hereby dismissed.

## AMENDED ORDER OF COURT

And now, November 3, 1971, at 3 p.m., an amended petition to abolish wards in the Borough of Mechanicsburg having been filed in accordance with the order of court of October 26, 1971, the exceptions filed to the petition be and are hereby dismissed; and it is hereby ordered and decreed that all of the wards of the Borough of Mechanicsburg shall be and are hereby abolished, and that one councilman at large be elected at the municipal election in the year 1973 for a term of two years, and four councilmen at large be elected at the municipal election in the year 1973 for terms of four years each, to coincide with the number of councilmen elected at such election in existing boroughs under the provisions of the Act of February 1, 1966, P. L. (1965), (No. 581) sec. 811, as amended, 53 PS §45811. Biannually thereafter, at the municipal election, a sufficient number of councilmen shall be elected, for a term of four years from the first Monday of January next succeeding, to fill the places of those whose terms shall expire on the first Monday of January next following such election. Ward councilmen in office or elected to office at the time of this decree may remain in office until the end of the terms for which they were respectively elected or appointed, but no election or appointment of a ward councilman shall be made at any time after the date of this decree.